

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LEAH K. GIACONA | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 05-5197 |
| | * | |
| ALLSTATE INSURANCE COMPANY | * | SECTION SECT. J MAG. 5 |
| | * | MAGISTRATE |
| * * * * * * * * * * * * * * | * | **JURY TRIAL DEMANDED** |

## COMPLAINT

The complaint of Leah K. Giacona, a person of the full age of majority and a resident and domiciliary of the Parish of Jefferson, State of Louisiana within the Eastern District of Louisiana, respectfully avers as follows:

1. Made defendant herein is Allstate Insurance Company, a foreign corporation authorized to do and doing business in the Eastern District of Louisiana.

2. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

3. Venue is proper pursuant to 28 U.S.C. § 1391(a) and 42 U.S.C. § 2000(e)-5(f).

## FACTS

4. Plaintiff Leah K. Giacona (Giacona) is a Caucasian female. She began her employment with Defendant Allstate Insurance Company on or about June 17, 2002 as a Staff Clerical Assistant in Allstate's Arkansas-Louisiana-Mississippi Property Claims office in Metairie, Parish of Jefferson,

Eastern District of Louisiana. At all times pertinent hereto, Giacona's immediate supervisors were Ms. Eileen Auglair (Auglair) and Ms. Annie Smith (Smith).

5.  Giacona had an exemplary performance record and was rated as an excellent employee. Giacona was never disciplined or evaluated poorly until after November 28, 2003.

6.  On or about November 28, 2003, Giacona's thirteen-year-old son, Joshua Rabito (Joshua), was hit by a car and paralyzed from the waist down. Joshua suffered a debilitating injury with a partial cord transection of the spine. As a result of the accident, Joshua has been rendered a paraplegic. Thus, Joshua's condition constitutes an actual disability under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*

7.  After the accident, Giacona requested leave under the Family and Medical Leave Act (FMLA), initially taking only one month off of work to care for her critically ill and injured minor son. After Joshua became paralyzed, Giacona advised Allstate and her supervisors that Joshua needed frequent emergency and unforeseeable attention and medical treatment.

8.  Giacona requested FMLA leave in accordance with the policies and procedures of Allstate, each time requesting intermittent leave due to the fact that her son was disabled with a serious health condition requiring daily assistance, basic medical and personal needs, safety, transportation, and psychological comfort.

9.  Giacona always sent timely "Certificates of Health Care Provider" forms as well as all other required designation forms. Furthermore, Giacona followed Allstate's policies and procedures when notifying Allstate of a scheduled doctor visit and emergency time.

10. Allstate's FMLA unit failed to properly account for Giacona's FMLA required intermittent time off as well as her scheduled time off of work. When Giacona questioned Allstate's FMLA unit about the discrepancies, she was told not to worry and that the errors would be corrected.

11. In spite of this assurance, Auglair, with the knowledge and/or approval of Allstate's Human Resources Department, wrote up Giacona for leave that Allstate failed to designate as FMLA leave on or about September 24, 2004. This action violated FMLA and the ADA, which prohibits discriminatory treatment due to the disability of an employee or an employee's close relative.

12. Allstate knew or should have known that Giacona's leave was covered and approved intermittent FMLA leave. Allstate furthermore knew or should have known that Joshua's condition required emergency medical treatment and unforeseeable attention since the date of Joshua's injury, November 28, 2003. Additionally, Allstate knew or should have known that Joshua's need for emergency medical treatment and unforeseeable attention could not be predicted in terms of frequency or duration.

13. Giacona executed several "Certificate of Health Care Provider" forms indicating that she needed scheduled and unscheduled leave to care for Joshua; *Allstate approved each request for intermittent FMLA leave.* Thus, Giacona was disciplined for taking approved time off to care for her critically injured son.

14. In the write-up dated September 24, 2004, Allstate informed Giacona that any further absences would result in termination

15. Allstate knew or should have known that falsely accusing Giacona of being absent without FMLA approval, even though she had such approval, would cause undue stress and a hostile work

3

environment for Giacona. Additionally, Allstate knew or should have known that Giacona was already suffering extreme emotional distress as the sole parent to a seriously impaired teenage son.

16. In October 2004, Allstate disapproved Giacona's intermittent leave request. In so doing, Allstate informed Giacona that to receive any further FMLA leave, she would have to notify Allstate of the "anticipated frequency and duration of *each absence*." Allstate knew or should have known that its request was impossible and that such a requirement was expressly against the provisions of FMLA. Furthermore, Allstate interfered with Giacona's ability to obtain FMLA leave by placing this unreasonable burden upon her. Allstate's interference with Giacona's FMLA leave was in retaliation of the intermittent and schedule FMLA leave that she had already taken.

17. Allstate interfered with Giacona's FMLA leave as part of a concerted effort to unfairly justify her termination or to force her involuntary resignation. Allstate knew or should have known that its interference with Giacona's leave would force a decision upon Giacona, a decision to choose between caring for her son or keeping her job.

18. Thus, Giacona was constructively discharged in October 2004 in violation of the Family and Medical Leave Act and the Americans with Disabilities Act. Additionally or in the alternative, Giacona's termination was in direct violation of Section 510 of the Employee Retirement Income Securities Act of 1974, 29 U.S.C. § 1140, *et seq.*, as Giacona was terminated for seeking benefits under Allstate's Long-Term Disability Plan, Short-Term Disability Plan, and Sick Pay Plan, all of which are covered under ERISA.

19. On information and belief, Giacona's son had amassed huge and ongoing medical bills. Allstate was largely self-insured for these losses, and its decision to terminate Giacona was motivated by self-interest contrary to the provisions of the ERISA statute.

20. Allstate interfered with Giacona's rights under these benefit plans through the acts and/or omissions of its employees and/or agents, who were motivated to terminate Giacona in order to avoid payment of benefits under Allstate's benefit plans.

21. Giacona exercised her right to receive benefits under Allstate's benefit plans, as referenced above, and was constructively discharged because Allstate wanted to restrict and/or avoid payment of benefits to her under its plans.

22. Giacona filed her Charge of Discrimination with the United States Equal Employment Opportunity Commission on June 23, 2005. On June 27, 2005, Giacona was issued her Dismissal and Notice of Rights. Giacona's Complaint is filed timely by order of Chief Judge Helen Ginger Berrigan, noting a suspension of prescription and other time-sensitive deadlines for new filings pursuant to Special Sessions Order pursuant to H.R. 3650/P/L10963, the Federal Judicial Emergency Special Sessions Act of 2005 (September 9, 2005).

23. Giacona demands and is entitled to a trial by jury on all issues so triable.

### DAMAGES

24. As a result of the actions of Allstate, Giacona has suffered and continues to suffer damages in the following, non-exclusive respects:

    a. back pay including benefits;

    b. front pay including benefits;

  c.  restitution of benefits lost;

  d.  mental anguish;

  e.  humiliation and embarrassment;

  f.  loss of enjoyment of life;

  g.  medical expenses;

  h.  prejudgment interest;

  i.  punitive damages;

  j.  attorney's fees;

  k.  costs of these proceedings;

  l.  and, any and all other injunctive and equitable relief available to Giacona under law.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Leah K. Giacona prays that this, her Complaint, be cited and served on Defendant Allstate Insurance Company, that Defendant Allstate Insurance Company be required to answer same, and, after due proceedings had, that judgment be rendered in her favor and against Defendant Allstate Insurance Company for an amount supported by the evidence, for a mandatory injunction directing Defendant Allstate Insurance Company to rehire Plaintiff Leah K. Giacona retroactive to October 2004 to a position equivalent to that which she held prior to his illegal discharge, or, in the alternative, for front pay and benefits, for back pay and benefits, including any and all monetary losses, and compensatory and punitive damages, for such additional equitable and legal relief as deemed appropriate, proper and just by this Court, and for costs and reasonable attorney's fees.

Plaintiff Leah K. Giacona further prays for a trial by jury on all issues so triable.

                                            Respectfully submitted,

                                            */s/ Dale E. Williams*

                                            DALE E. WILLIAMS, BAR #18709
                                            Law Office of Dale Edward Williams
                                            212 Park Place
                                            Covington, Louisiana 70433
                                            Telephone: (985) 898-6368
                                            Facsimile:  (985) 892-2640